# Sibley *v.* Alba.

*Bill in Equity for Partition of Lands.*

<table>
<tr><td>95</td><td>191</td></tr>
<tr><td>119</td><td>624</td></tr>
<tr><td>95</td><td>191</td></tr>
<tr><td>124</td><td>210</td></tr>
</table>

1. *Champertous contract.*—Champerty is a good defense to an action founded on the champertous contract, and may be claimed by demurrer or answer, as the facts may or may not appear on the face of the bill or complaint; but a stranger to the contract can not set up the champerty in defense of an action by a third party to enforce rights acquired under it.

2. *Adverse possession, as between tenants in common.*—The possession of land by one tenant in common is not adverse to his co-tenant, unless an actual ouster is shown, or facts which the law deems equivalent to an ouster.

3. *Partition ; claim of adverse possession ; issue at law.*—In a suit for the partition of land between tenants in common, if the defendant claims adverse possession of the entire tract, this does not oust the jurisdiction of the court, but requires a suspension of the proceedings until the question of disputed ownership can be settled on an issue made up and submitted to a jury.

4. *Conveyance of lands adversely held.*—A conveyance of lands adversely held is void as against the adverse possessor and those claiming under him ; but this principle does not apply to a purchaser at a judicial sale, even though he is the plaintiff in the judgment or process.

5. *Payment of mortgage debt ; conclusiveness of decree of foreclosure.* Payment of the mortgage debt is a complete defense to a suit for foreclosure ; but, if the heirs and administrator are made parties to the foreclosure suit, and neither of them interposes that defense, the decree is conclusive evidence that the debt is unpaid, unless the heirs can successfully impeach it on the ground of fraud and collusion between the administrator and the mortgagee or his assignee, who also became the purchaser at the sale under the decree.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. WM. H. TAYLOE.

The bill in this case was filed on the 6th October, 1890, by Origen S. Sibley against Peter F. Alba, and sought partition of a certain tract of land of which the com-

plainant claimed to own an undivided one-half interest, and alleged that the defendant was seized of the other half as tenant in common with him. The bill contained an allegation in these words: "Your orator shows that his title to the said undivided one half of said lands is derived as follows: James H. Duvall, being seized of an indefeasible estate in fee simple in and to said undivided one-half interest in and to said lands, on the 6th October, 1869, did convey the same to A. H. Brown, then doing business under the name of A. H. Brown & Co., by deed of mortgage to secure an indebtedness of $2,500; which said mortgage, said mortgage indebtedness, and the undivided one half in and of said lands, were, on the 10th November, 1888, assigned and conveyed to your orators by the executors of the last will of said A. H. Brown, then deceased; whereupon your orator exhibited his bill in this court, in the cause entitled *Origen Sibley v. E. S. Barnes, administrator, et al.*, being No. 4762 on the docket of this court, praying for a foreclosure and sale of the said premises. In said cause such preceedings were had that the undivided one-half interest in said lands was sold by the register under the decree of the court to your orator, and the register has made and executed to him a deed of conveyance of said undivided half interest in said lands which had been of said James A. Duvall. *The record and proceedings in said cause No. 4762 on the docket of this court are here referred to, and made a part of this bill.*"

The defendant demurred to the bill, assigning as grounds of demurrer, (1) because it shows, by reference to the record of case No. 4752, that E. S. Barnes is in fact interested in the suit with said Sibley, and he is not named as a complainant; (2) because it shows that said mortgage was paid and satisfied before it was purchased by complainant; (3) because it seeks to assert rights acquired by complainant under a contract which is shown to be champertous; (4) because it shows that defendant was in adverse possession of the land, under claim of ownership, at the time of complainant's alleged purchase under the mortgage. On the filing of this demurrer. the complainant amended his bill by striking out the italicized words above set out; and the defendant then withdrew his demurrer, and filed four pleas in bar, in substance as follows:

*Plea No. 1.* The court ought not to take cognizance of said bill, "because the said suit is founded on and grows out of a certain contract tainted with champerty and maintenance, to which the said complainant was and is a party,

[Sibley v. Alba.]

and which he is now attempting by this bill to execute and enforce. Said contract is as follows : In the year 1888, one Edward S. Barnes, who makes a business of searching the records of Mobile county, discovered thereon an ancient mortgage executed on the 6th of October, 1869, by one James Duvall to secure to A. H. Brown & Co., of Zanesville, Ohio, the payment of a debt of $2,500, not evidenced by notes, but payable in installments, one half on the 6th of October, 1870, and one half on the 6th October, 1871. As soon as the said Barnes made this discovery, he at once began a search for the executors of A. H. Brown, who composed the firm of A. H. Brown & Co., who were found in Zanesville, Ohio, and in New York. In this wise the said executors were informed of the existence of such mortgage, of which they did not know, and which they had not counted as an asset of said Brown's estate. Finally, after some investigation, which disclosed the fact that in 1873 said mortgage had been put in the hands of the law firm of Anderson & Bond of Mobile for collection, and upon their docket the entry was made, 'Settled between the parties ;' the said executors agreed to sell and assign said mortgage, which, if unpaid, then amounted to nearly $6,000, to said E S. Barnes, for the nominal sum of one hundred and fifty dollars, After the terms of said sale were arranged between said executors and the said Barnes, the last named found himself unable to raise said sum. Thereupon the said Barnes went to his brother-in-law, Origen Sibley, the said complainant, and induced him to advance said sum of one hundred and fifty dollars, upon the following terms and conditions : it was agreed that the said Sibley should advance said sum, and take an assignment of said mortgage from said executors, and then file a bill in his own name for the foreclosure of the same ; with the further agreement that the profit and fruit of said suit should be equally divided between said Sibley and Barnes. In accordance with said agreement, the said Sibley did on February 18th, 1889, file a bill to foreclose said mortgage in this court in cause No. 4762, and to that bill the said E. S. Barnes was made a party defendant, as the administrator of said Jas. H. Duvall, who had died before said bill was filed. In said suit, which was conducted *ex parte,* and by collusion between the said Sibley and the said Barnes, a decree of foreclosure was finally rendered, subjecting the one undivided half interest in the certain lands sought to be partitioned in this suit to said pretended mortgage ; and at the foreclosure sale the said Sibley be-

13

came the purchaser, for á sum nearly equal to what the said pretended mortgage was claimed to be at that time. Defendant avers that said purchase was made in accordance with said original champertous agreement, and in order to enable said Sibley to file a new bill for the purpose of partition; and defendant avers that the present bill is now filed *in accordance with said original illegal agreement between the said Sibley and the said Barnes*, with the motive and purpose of carrying out the said original agreement, in order to divide the fruit of said purchase between the said Sibley and said Barnes. And defendant avers that the sole and only title set up in this present suit is the fruit of said original agreement which the bill in No. 4762 was filed to execute in part."

*Plea No. 2.* "In August, 1877, this defendant went into adverse possession of the undivided one-half interest in the lands claimed by complainant in this suit, and was claiming said half interest adversely to all the world during the remainder of said year, 1877, and during the time that has since transpired, and is now holding the same adversely. While this defendant was in such adverse possession of such half interest, the said Sibley and Barnes were informed of the fact, and purchased said pretended mortgage from said executors with knowledge that said half interest which it pretended to cover was held adversely; and before said purchase was fully completed, the said Sibley and Barnes declared the fact that the validity of said mortgage would be bitterly fought, and they expressed to said executors the fact that it would be necessary for them to carry on litigation in order to enforce said mortgage against such party holding and claiming such interest adversely."

*Plea No. 3.* "That said mortgage made by J. H. Duvall on the 6th of October, 1869, and which the said bill in No. 4762 was filed to foreclose, became due on the 6th of October, 1871; that to said bill of foreclosure this defendant was not a party at the time the decree establishing the existence of said mortgage was made; that from the time of the maturity of said mortgage debt on the 6th of October, 1871, up to the filing of the present bill on the 6th of October, 1890—a period of nineteen years—no payment of interest, or otherwise, was ever made on account of said mortgage, so far as the evidence in said pretended foreclosure suit showed. Defendant further avers that, from the evidence taken in said foreclosure suit by said complainant, it appeared from the testimony of the executors of the said A. H. Brown that his books failed to show any indebted-

ness from said J. H. Duvall to said Brown at the time of his death. Defendant avers that it further appeared from the evidence and admissions in said cause that, as far back as the year 1873, the said Brown had placed said mortgage in the hands of the law firm of Anderson & Bond, of Mobile, for foreclosure, and as security for the costs of said suit deposited in their hands the sum of $100. The docket of said firm failed to show that said suit was ever brought; on the contrary, the said docket showed, opposite said cause, the following entry: *'Settled between the parties.'* Defendant avers that said mortgage was settled between the original parties thereto, and paid and satisfied, long before the pretended sale or assignment from the executors of said Brown to said Sibley and Barnes, and said mortgage was not an existing security when said foreclosure bill in No. 4762 was filed."

*Plea No. 4.* "Complainant should not be permitted to go further in said cause until the said Edward S. Barnes, his co-partner in the original illegal agreement, and equally interested with him in the subject-matter of this suit, shall be made a party thereto, either as complainant or defendant."

The cause being submitted for hearing on these pleas, the chancellor held the third plea sufficient, and the others insufficient. The complainant appeals from this decree, and assigns as error the ruling on the third plea; and there are cross-assignments of error by the defendant, founded on the ruling as to the insufficiency of the other pleas.

R. P. DESHON, for appellant.—(1.) The first plea does not show a champertous contract, as now recognized in Alabama.—*Gilman v. Jones*, 87 Ala. 701; *Ware's Adm'r v. Russell*, 70 Ala. 174; *P. & M. Ins. Co. v. Tunstall*, 72 Ala. 148. See, also, Story's Equity, §§ 1039–50; 1 Greenl. Cruise, 1119–20; 1 Jones on Mortgages, §§ 788, 813; 2 *Ib.* § 1377. If the contract were champertous, the defendant can not take advantage of it in this suit. (2.) Adverse possession of the premises is no bar to a suit for partition.—*McMath v. Debardelaben*, 75 Ala. 68. Judicial sales are exceptions to the general rule, which holds conveyances of land adversely held to be void.—*Humes v. Bernstein*, 72 Ala. 546. (3.) The third plea is not a plea of payment, nor do the facts stated raise a presumption of payment. The natural conclusion from the facts stated is, that an extension of time was granted, and the papers were withdrawn from the hands of the lawyers on that account. No presumption of payment arises until the lapse of twenty years. (4.) Barnes is not a

necessary party to this suit.—*Dawson v. Burrus,* 73 Ala. 111.
(5.) The several pleas are, in substance and effect, assign-
ments of error on the decree of foreclosure, and seek to raise
questions which are concluded by that decree.—*Otis v. Mc-
Millan,* 70 Ala. 58; *Bailey v. Timberlake,* 74 Ala. 225; *Leh-
man, Durr & Co. v. Shook,* 69 Ala. 491; 93 N. Y. 216; 69 Am.
Dec. 178. (6.) The defendant was not made a party to the
foreclosure suit, and properly so.—*Randle v. Boyd,* 73 Ala.
286; *McHan v. Ordway,* 82 Ala. 283; *Hambrick v. Russell,*
86 Ala. 199. His rights are not affected by that decree, and
he has no connection with it.

HANNIS TAYLOR, *contra.*—(1.) The first plea states facts
which . clearly show that the complanant is seeking to en-
force rights acquired under a champertous contract, and the
court will not aid him.—*Holloway v. Lowe,* 7 Porter, 488;
*Hilton v. Woods,* L. R. 4 Equity Cases, 432; 3 Amer. & Eng.
Encyc. Law, 86–7, note 3; *Ware v. Russell,* 70 Ala. 174;
*Gilman v. Jones,* 87 Ala. 691. (2.) The complainant acquired
no title by his purchase at the alleged foreclosure sale, as
against this defendant, who was then in adverse possession
of the premises, and was not a party to the foreclosure suit.
*Humes v. Bernstein,* 60 Ala. 602. (3.) Payment of the mort-
gage debt devests the title of the mortgagee.—Code, § 1870;
*Mead v. York,* 57 Amer. Dec. 467, note; 66 *Ib.* 743, note.
After the lapse of twenty years, the presumption of payment
is practically conclusive.—34 Ala. 500; 54 Ala. 552; 58 Ala.
44; 54 Ala. 127. After the lapse of a less period—as nine-
teen years, in this case—the presumption is not conclusive,
but will be drawn from circumstances of more or less weight,
as weighed by the jury.—2 Jones on Mortgages, 916, and
cases cited.

STONE, C. J.—This case was submitted to the chancel-
lor on the sufficiency of four several pleas. The first, sec-
ond and fourth were held insufficient, while the third was
pronounced a good defense to the bill. There are cross-
assignments of error, and the sufficiency of each of the pleas
is thus presented for our decision.

Sibley's title, as alleged, arose as follows: In October,
1869, one Duvall executed to Brown a mortgage on an undi-
vided half interest in certain lots of land in Mobile county,
to secure a debt of $2,500.00, due in one and two years.
That mortgage was duly recorded. In November, 1888,
Brown having died, his executors conveyed and transferred
the mortgage and all it secured to Sibley. This mortgage

was foreclosed by suit in chancery, instituted by Sibley in 1889, and at the sale under the decree he became the purchaser, and received a conveyance. In October, 1890, he instituted this suit.

Partition is the object of the present suit. The bill sets forth Sibley's claim and chain of title as briefly sketched above. It avers that the other undivided half interest in the lots belongs to Alba, the defendant. Only the two, Sibley and Alba, are made parties to this suit. In the bill and transcript before us, the reference to the foreclosure suit does not disclose who were defendants, other than Barnes, the administrator of Duvall. It speaks of that suit as "the case entitled *Origen Sibley v. E. S. Barnes, administrator, et al.*" We are no where informed who were the other parties defendant. We suppose they were the heirs-at-law of Duvall, the mortgagor; for, unless they were before the court, their title could not be devested. We will therefore treat this case as if they were before the court. It is proper that we should state that no intimation has been given, either in the pleadings or argument, which questions the presence of all necessary parties in the foreclosure suit.

It is not shown in the record, nor averred in the pleadings, whether or not Duvall and Alba were original tenants in common of the lots sought to be partitioned, or whether Alba claims to have acquired his interest at a later time. Neither is it denied that Duvall, when he executed the mortgage to Brown, owned an undivided half interest in the lots; nor is it claimed or averred that Alba has ever acquired that half interest by purchase or descent. The only right he relies on for maintaining his possession is, that he "went into adverse possession of said one-half interest in the lands claimed by complainant in this suit, and was claiming said interest adversely to all the world during the remainder of said year 1877, and during the time that has since transpired, and is now holding the same adversely." The bill charges that Alba and Sibley each own an undivided half interest in the lots, the latter by virtue of his purchase at the foreclosure sale; and the foregoing extract from plea No. 2 is the only statement of fact interposed by defendant, that can be construed into a denial of the averment that Duvall and Alba were tenants in common. Under this state of the pleading, we feel forced to treat this case as if Duvall and Alba were originally co-equal tenants in common.

The first plea interposed sets up the alleged champertous agreement between Sibley and Barnes, which led the former to purchase and become the owner of the Duvall claim and

mortgage. That agreement might raise very grave inquiries in any dispute that may spring up between Sibley and Barnes. It can not in the least affect Alba, a mere stranger to the negotiation and to its consequences. The result of the authorities bearing on this question is correctly summarized in 3 Amer. & Eng. Encyc. of Law, 86, in the following language: "When an action is brought directly upon a champertous contract, champerty is a good defense, and may be set up by way of answer; and if the true character of the contract appears upon the face of the pleading, such pleading may be successfully demurred to. The better opinion would appear to be, that the defense of champerty can only be set up when the champertous contract itself is sought to be enforced." See the many authorities cited, note 3. The chancellor did not err in disallowing this plea.

Plea No. 2. We have copied above the averment found in this plea in reference to Alba's adverse holding. It is wholly insufficient to constitute his possession adverse against a tenant in common. "The seizin and possession of one tenant in common is the seizin and possession of the other or others, and an uninterrupted, exclusive possession by one is not usually deemed adverse, unless accompanied by circumstances indicating an expulsion or ouster of the other."—*Brady v. Huff*, 75 Ala. 80; *Abercrombie v. Baldwin*, 15 Ala. 363. "The possession of a tenant in common is not adverse to that of his co-tenant, unless there is an actual ouster, or refusal to let the co-tenant occupy."—*Burrus v. Meadors*, 90 Ala. 140; *Newbold v. Smart*, 67 Ala. 326; *Stevenson v. Anderson*, 87 Ala. 228. "The possession of one tenant in common, though exclusive, being consistent with the right of his co-tenant, does not amount to a disseizin of the co-tenant; and an ouster, or some act which the law deems equivalent to an ouster, is necessary to constitute a disseizin of his co-tenant by a tenant in common."—1 Amer. & Eng. Encyc. of Law, 232; *Duncan v. Williams*, 89 Ala. 341. The averments of the plea fail to show a holding by Alba, adverse to the rights of his co-tenant Brown. But, if this averment were sufficient, that would not oust the jurisdiction. The chancellor would suspend proceedings until the question of disputed ownership could be settled on an issue to be made up and submitted to a jury.—*McMath v. Debardelaben*, 75 Ala. 68.

Another view: If, when the sale was made under the foreclosure proceedings, any person other than Sibley had purchased, it would scarcely be contended, under the facts shown in the pleadings in this case, that such purchaser

[Sibley v. Alba.]

could not maintain a suit for partition. Can the fact that Sibley purchased make a difference? The rule against recovery on a title acquired while the property was held adversely, does not apply when the property was purchased at judicial sale.—*Humes v. Bernstein,* 72 Ala. 546.

The third plea sets up in defense of this suit for partition that the alleged mortgage debt from Duvall to Brown had been paid long before Sibley asserted claim to it, or procured a foreclosure of the mortgage, which culminated in his purchase of the undivided half interest. In the foreclosure suit, the heirs of Duvall were necessary parties. We suppose they were parties, and, as we have before stated, we will treat this case as if they were parties. The record before us shows that Barnes, the administrator, was a party to that suit. Plea No. 1 charges champerty, collusion and fraud between Sibley and Barnes, by which they acquired the ownership of the alleged mortgage debt, and procured the decree of foreclosure and sale under it. If the mortgage debt had been paid, and if, by collusion and fraud between Barnes and Sibley, the decree of foreclosure and the sale were brought about, then a great wrong was inflicted on Duvall's heirs; and unless, by failure to move at the proper time, they have forfeited their right to have the questions retried and the wrongs redressed, the courts and their process are open to them, and they can obtain ample redress and relief from Sibley and Barnes. This, on the cardinal principle, that fraud, if properly assailed, vitiates all transactions, no matter what form they may be made to assume. Standing, however, as the record does, and assuming that the heirs of Duvall were parties to the foreclosure suit, that record is conclusive evidence that the mortgage debt was unpaid, alike against Duvall's estate, and against all other persons who can not connect themselves with his title.

If, however, Alba has succeeded to Duvall's title or rights, not by mere adverse holding, but by purchase or conveyance, or by a subsisting, unpaid and unbarred money demand, this may open the door to him to show that the debt from Duvall to Brown had been paid before the decree in foreclosure was rendered.—*Mead v. York,* 57 Amer. Dec. 467, and note. The third plea presents no bar to this suit, and the decretal order of the chancellor holding that plea sufficient must be reversed.

Reversed and rendered, but cause remanded for further proceedings in accordance with this opinion. Let the appellee pay the costs of the appeal.